# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 7, 2003 Session

## JAMES WEBB v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Haywood County
#### No. 2190     Jon Kerry Blackwood, Judge

---

### No. W2003-00702-CCA-R3-CD  - Filed February 9, 2004

---

The petitioner, James Webb, was convicted of aggravated rape and sentenced to eighteen years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed for post-conviction relief, alleging that he received the ineffective assistance of counsel. The post-conviction court denied the petition, and the petitioner timely appealed. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Shannon A. Jones, Alamo, Tennessee, for the appellant, James Webb.

Michael E. Moore, Solicitor General; Kathy D. Aslinger, Assistant Attorney General; Garry G. Brown, District Attorney General; and Elaine Todd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On January 13, 1995, the petitioner was convicted of the aggravated rape of his daughter, SW,[1] and the trial court sentenced the appellant as a standard Range I offender to eighteen years incarceration. The petitioner appealed his conviction to this court and we affirmed the judgment of the trial court. See State v. James Webb, No. 02C01-9512-CC-00383, 1997 WL 80971, at *1 (Tenn. Crim. App. at Jackson, Feb. 27, 1997). We take the following facts from our opinion on direct appeal:

---

[1] This court does not use the names of sexual abuse victims and instead refers to the victims by their initials.

The proof at trial established that the [petitioner] committed the offense of aggravated rape in 1982. At the time of the offense, the victim, SW, was approximately eleven years old. On May 2, 1994, roughly twelve years later, the [petitioner] was indicted for a single count of aggravated rape.

. . . .

The [petitioner's] case proceeded to trial on January 13, 1995. At trial, SW recounted that, in 1982, en route to a grocery store, her father took her to a field and, in his truck, forcibly engaged in sexual intercourse with her. According to the victim, the [petitioner] continued to engage in intercourse with his daughter on "a regular basis" until she was eighteen.

. . . .

[Additionally,] defense counsel and the State stipulated to the admissibility of several statements by the victim's mother to DHS personnel. The State introduced an excerpt from an interview of the victim's mother by DHS on August 16, 1994. The [petitioner] introduced an excerpt from an earlier interview that occurred on March 16, 1986[, after the victim first accused the petitioner of molesting her]. The victim's mother did not testify at trial. [SW] testified that, at the time of the trial, her mother was "supposed to be in Mississippi, but other than that [she didn't] really know."

Id. at **1-2 (footnotes omitted).

Subsequently, the petitioner filed for post-conviction relief, alleging that he received the ineffective assistance of counsel. Specifically, the petitioner claimed that he "received ineffective assistance of counsel for counsel's failure to present evidence of motive for victim to be biased against [the petitioner], failure to require [a] witness[, the victim's mother,] to testify at trial, and failure to file a motion for election of offenses."

Initially, the post-conviction court summarily dismissed the petition. However, on appeal, this court reversed the summary dismissal and remanded to the post-conviction court for an evidentiary hearing. See James Webb v. State, W1998-00047-CCA-R3-PC, 2000 WL 279938, at *1 (Tenn. Crim. App. at Jackson, Mar. 3, 2000). On remand, the post-conviction court appointed counsel to represent the petitioner and an evidentiary hearing on the petitioner's claim of ineffective assistance was held.

At the post-conviction hearing, the petitioner testified that he believed his trial counsel should have presented proof of the victim's motive for making the allegations of abuse. The petitioner stated, "My older daughter[, the victim,] had my younger daughter out there at a drug bust. . . . When I stopped it and we had conflict is when all this come up." In other words, the petitioner contended that familial tension relating to the "drug bust" led the victim to make the allegations against him.

The petitioner also complained that trial counsel erred because his ex-wife, Patricia Webb Jones, the victim's mother, "was not required to testify in person at the trial." The petitioner stated that instead of Jones' testimony, a "written note" by Jones was presented to the jury because she was "out of town." The petitioner claimed that Jones could have testified that "this allegation had been brought up before" in 1986. In addition, Jones could have testified as to the victim's motive for making the allegations against the petitioner and would have confirmed that the victim was "rebellant [sic]." The petitioner further alleged, "Well, it's just so many things that went down, you know, that [Jones] could – you get her on the stand you could've got 'em out of [her], you know." However, on cross-examination, the petitioner stated that he did not know how he was damaged as a result of Jones' failure to testify.

The petitioner acknowledged that he and Jones were divorced at the time of trial. The petitioner opined that the divorce was "pretty ugly." Additionally, the petitioner admitted that at the time of trial, he was facing an allegation that he had molested his younger daughter and Jones was aware of this allegation.

The petitioner then called Patricia Ann Jones to testify at the post-conviction hearing. Jones explained that she had remarried after her divorce from the petitioner and was in Texas at the time of the petitioner's trial. Jones maintained that she was never interviewed in preparation for possibly testifying at trial. However, she had given statements to the Department of Human Services (DHS). In her statements, Jones stated that she was not aware that the petitioner was molesting the victim until the victim told Jones' sister. Jones' sister then informed her of the allegations. Jones related that she had witnessed only one incident of suspicious activity. Jones explained that she had once seen the petitioner coming out of the victim's bedroom with his pants unzipped, but the petitioner had denied any wrongdoing.

Jones testified that she and the petitioner got an "agreement divorce" because "[w]e was fighting all the time." She denied that the divorce was "ugly." She further denied that she was aware of an allegation that petitioner was molesting his younger daughter.

Next, trial counsel testified at the post-conviction hearing. Counsel stated that he and the petitioner discussed calling Jones to testify at trial. The petitioner told trial counsel that he and Jones had gone through a "very ugly divorce." Accordingly, trial counsel was very reluctant to ask Jones to testify, fearing that she might change her testimony on the stand. Trial counsel explained, "I do a lot of domestic work and as a rule ex-spouses don't care much about their other ex-spouses when – and, frankly, I hate to put it this way, but you really can't trust a lot of times what someone might

tell the lawyer." Trial counsel maintained that during trial "we were walking a real fine line"; therefore, he was unwilling to risk having Jones testify.

Trial counsel testified that, as a tactical decision, he agreed to the use of Jones' statements. He believed the statements tended to "exculpate" the petitioner and discredit the testimony of the victim. Also, Jones' statements to DHS "were controlled in the sense we knew exactly what was said."

Additionally, trial counsel explained that "my understanding was the ex-wife knew of the other case" involving the petitioner's younger daughter. Therefore, trial counsel did not want to question Jones regarding the victim's motive because he feared Jones would testify that the abuse of the victim's younger sister was the motive for the allegations. Trial counsel maintained that any evidence regarding the charges that the petitioner molested his younger daughter "would've been devastating to the case if it had come out in any way, shape or form." In fact, trial counsel insisted that he made a strategic decision not to pursue motive evidence because of his concern that the victim would testify that she made the allegations after learning that the petitioner "was abusing her younger sister."

Trial counsel admitted that during the victim's testimony she referred to other instances of abuse by the petitioner. Regardless, trial counsel failed to file a motion to require the State to elect offenses. Trial counsel stated, "I've got no recollection of why I did or did not [move for election]." He noted that the victim's references to other instances were "general" and "vague," and that may have been why he did not move for election. Trial counsel contended, "It was a tactical decision I made at the time."

At the conclusion of the hearing, the post-conviction court denied the petitioner's claim for post-conviction relief, finding that trial counsel's decisions were the result of trial strategy. Additionally, the post-conviction court found that the petitioner had failed to establish that he was prejudiced by any of the alleged errors of counsel. Finally, regarding the election issue, the post-conviction court noted, "As addressed by the Court of Appeals, the matter would have been harmless in any respect." The petitioner appealed this ruling.

## II. Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. See Tenn. Code Ann. 40-35-210(f) (1997).[2] "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the

---

[2] Since the post-conviction hearing in the instant case, this provision has been codified at Tennessee Code Annotated section 40-30-110(f) (2003).

post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to a de novo review. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the petitioner makes a sufficient showing of one component. Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-688, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

First, the petitioner argues that he was prejudiced by counsel's failure to present proof that the "drug bust" was the motive for the victim's allegations. The petitioner acknowledged that the victim was aware of accusations that he was abusing his younger daughter at the time she made her allegations of abuse against the petitioner. Trial counsel repeatedly maintained that he did not pursue motive evidence because he did not want to "open the door" to any evidence concerning the allegations about the petitioner abusing his younger daughter. Trial counsel stated that he believed the victim and Jones would have testified that the victim made allegations against the petitioner after learning of the petitioner's abuse of the victim's younger sister. We agree with the post-conviction court that trial counsel's decision was attributable to reasonable trial strategy. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon

-5-

inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner also argues that trial counsel was ineffective in failing to require Jones to testify at trial. Trial counsel explained that he thought Jones would be a "loose cannon" on the stand because of her tumultuous divorce from the petitioner. However, trial counsel believed that her statements were "controlled" and tended to "exculpate" the petitioner. Again, we conclude that trial counsel's decision was the result of sound trial strategy.

Finally, the petitioner complains that trial counsel erred by failing to compel the State to elect offenses. As we earlier noted, trial counsel testified that he could not recall why he did not move for an election of offenses. The post-conviction court found, "It was part of the trial counsel's strategy in this case to limit this matter to this one matter and not bring up any other matters." Regardless of the post-conviction court's reasoning, we conclude that trial counsel's testimony that he could not recall why he failed to move for election was inconclusive.

However, as the post-conviction court noted, this issue was previously addressed by this court on direct appeal. Concerning this issue, this court stated:

> [I]n this case, although the victim alluded to numerous incidents of sexual abuse occurring within the indicted period, the State failed to elect the offense upon which it would proceed, and the trial court failed to give an augmented instruction to the jury. . . . [B]ecause "the requirement of election is fundamental, immediately touching on the constitutional rights of the accused," we address the merits of this issue. . . .

> [I]n the instant case, we conclude that the State's failure to elect and the trial court's failure to give an augmented instruction did *not* constitute reversible constitutional trial error, because, absent any additional evidence, it *can* be concluded beyond a reasonable doubt that the verdict was unanimous as to the incident of rape *en route* to the grocery store in 1982. During its opening statement, the State only alluded to this incident. The State's closing argument is not included in the record, yet, during the course of the trial, the only incident described in any detail by the victim was the 1982 rape. The victim made only vague and brief reference to the other incidents. Finally, in announcing the jury's verdict to the trial court, the jury foreperson, Louise Southern, spontaneously remarked, "Your Honor, it was all unanimous."

Webb, No. 02C01-9512-CC-00383, 1997 WL 80971, at ** 9-10 (footnotes omitted).

-6-

"A matter previously determined is not a proper subject for post-conviction relief." <u>Forrest v. State</u>, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). Accordingly, because we have previously determined this issue, we will not now reconsider our decision. <u>See</u> <u>Cole v. State</u>, 798 S.W.2d 261, 264-65 (Tenn. Crim. App. 1990). Moreover, because this court previously determined that trial counsel's failure to move for an election of offenses was at most harmless error, the petitioner has failed to demonstrate any prejudice he suffered as the result of counsel's failure.

### III. Conclusion

Therefore, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE